# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CORINTH INVESTOR HOLDINGS, § | | |
| LLC D/B/A ATRIUM MEDICAL CENTER § | | |
| § | | |
| v. § | CASE NO. 4:13-CV-00682 | |
| § | Judge Clark/Judge Mazzant | |
| EVANSTON INSURANCE § | | |
| COMPANY AND HOMELAND § | | |
| INSURANCE COMPANY OF NEW YORK § | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Corinth Investor Holdings, LLC's Motion to Strike Opinion Testimony and Report of Michael W. Huddleston (Dkt. #51). Having considered the motion, the responses, and the relevant pleadings, the Court finds Plaintiff's motion should be granted.

### BACKGROUND

This motion arises out of an underlying medical malpractice lawsuit filed under the terms of an insurance policy issued to Plaintiff Atrium Medical Center ("Atrium") by Homeland Insurance Company ("HIC") beginning on January 1, 2013 (Dkt. #54 at 1). On December 21, 2012, a lawsuit was filed against Atrium in the 431st District Court of Denton County, Texas, styled *Garrison, et al. v. Kahn, et al.*, No. 2012-71390-431, which asserted professional liability claims against Atrium (the "Garrison litigation" or the "underlying litigation"). The Garrisons assert that Mr. Garrison suffered injuries and now faces terminal illness due to the failure of his primary physician to advise him of the results of a CT scan performed at Atrium that revealed a stage I mediastinal mass located in his thymic gland. On January 2, 2013, Atrium was served with notice of this lawsuit. Atrium notified HIC of the lawsuit, and requested that HIC defend it pursuant to the Policy. HIC denied coverage asserting that the claim was not "first made"

1

against Atrium during the HIC policy period and was excluded by the Policy's prior knowledge exclusion. Plaintiff alleged Defendant has a duty to defend and indemnify Plaintiff under the policy, and Defendant's denial of coverage constitutes common law bad faith and violates provisions in the Texas Insurance Code (Dkt. #54 at 2).

Defendant designated Michael W. Huddleston ("Huddleston"), an attorney with experience in insurance law, as an expert witness (Dkt. #54 at 1). On August 26, 2014, Plaintiff filed its motion to strike (Dkt. #51). Defendant filed a response on September 8, 2014 (Dkt. #54). Plaintiff filed its reply on September 18, 2014 (Dkt. #56).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in the issue. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals*, *Inc*., the Supreme Court instructed courts to function as gatekeepers and determine whether expert testimony should be presented to the jury. *Daubert v. Merrell Dow Pharmaceuticals*, *Inc*., 509 U.S. 579, 590-93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove by a preponderance of the evidence that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590-91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, in order to be admissible, expert testimony must be "not only

relevant, but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exhaustive list of factors that courts may use in evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593-94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert,* 509 U.S. at 594.

The *Daubert* factors are not "a definitive checklist or test." *Daubert,* 509 U.S. at 593. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id*. at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kumho*, 526 U.S. at 150-51. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Exploration & Producing U.S.*, *Inc*., 224 F.3d 402, 405 (5th Cir. 2000) (citation omitted).

Rule 403 dictates the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Furthermore, the Fifth Circuit has consistently held that an expert may not render conclusions of law. *Snap–Drape, Inc. v. C.I.R.,* 98 F.3d 194, 198

(5th Cir. 1996); *see also Goodman v. Harris County,* 571 F.3d 388, 399 (5th Cir. 2009) ("[a]n expert may never render conclusions of law."); *Owen v. Kerr–McGee Corp.,* 698 F.2d 236, 240 (5th Cir. 1983) ("allowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.")

## ANALYSIS

Plaintiff moves to strike the testimony and report of Huddleston under Rules 702 and 403 of the Federal Rules of Evidence. FED. R. EVID. 702; FED. R. EVID. 403. Plaintiff asserts that Huddleston's opinions are inadmissible conclusions of law that invade the province of both the Court and the jury (Dkt. #51 at 2).

The Federal Rules of Evidence allow an expert to assert opinions that "embrace an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704(a). Of course, an expert witness may not offer opinions that amount to legal conclusions. *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001); *see also Calderon v. Bank of America N.A.*, 941 F. Supp. 2d 753, 759-60 (W.D. Tex. 2013) (noting that the law is not a proper subject of expert opinion testimony). The Fifth Circuit has held that while experts may give their opinions on ultimate issues, our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury. *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (quoting *Specht v. Jensen,* 853 F.2d 805, 808-09 (10th Cir. 1988)). The Fifth Circuit further explained:

> [A]llowing attorneys to testify to matters of law would be harmful to the jury. First, the jury would be very susceptible to adopting the expert's conclusion rather making its own decision. There is a certain mystique about the word "expert" and once the jury hears of the attorney's experience and expertise, it might think the witness even more reliable than the judge. Second, if an expert witness were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position. Such differing opinions as to what the law is would only confuse the jury.

*Id.*

Plaintiff does not contest Huddleston's expert qualifications, but argues that his testimony must be excluded at trial because "he intends to give several legal opinions regarding how this case ultimately should be determined. These opinions are impermissible because Mr. Huddleston is simply purporting to usurp the roles of the trial judge and jury" (Dkt. #51 at 2). Plaintiff points to numerous examples within Huddleston's report that supports its argument that Huddleston's opinions are impermissible legal opinions (Dkt. #51 at 5-6). The burden of proving the admissibility of an expert's testimony rests with the party offering the expert as a witness. *Bocanegra v. Vicmar Services*, 320 F.3d 581, 585 (5th Cir. 2003).

Plaintiff argues that Huddleston's statement on page eight, footnote two of his nineteen-page expert report is an inadmissible legal conclusion. Huddleston cites *Texas Med. Liab. Trust v. Transp. Ins. Co.*, 143 S.W.3d 335 (Tex. App.—Dallas 2004, pet denied) for the following opinion: "In insurance company practices, 74.051 letters are treated as notice of a claim, especially from a counsel with the reputation and stature of Charla Aldous" (Dkt. #51, Ex. A). Plaintiff further argues that Huddleston's statement that the underlying petition alleges Plaintiff received the Chapter 74 letter prior to the HIC policy period is also inadmissable. *Id*. Plaintiff contends that section V, subsection B of Huddleston's report contains language that infringes on the Court's responsibility to instruct the jury on the relevant law. *Id*. For example, on page ten of the report Huddleston cites *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex. 1988), *overruled by Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012), for his statement, "[t]he Texas Supreme Court has made clear that a carrier under the Insurance Code, DTPA and/or the common law retains the right to contest debatable claims." (Dkt. #51, Ex. A). Huddleston further states that "[s]imply denying coverage in and of itself is not bad faith or a misrepresentation." *Id*. In section V, subsection C beginning on page eleven of his report,

Huddleston explains that HIC had a reasonable reason for contesting coverage under the "controlling legal concepts applicable under Texas law." *Id*. Over the next page, Huddleston applies the "eight corners" rule to the terms of the policy by interpreting various terms and procedures in the insurance contract. *Id*. Finally, in section V, subsection E of his report, Huddleston discusses the relevance of extrinsic evidence and whether or not reliance upon such evidence was reasonable.

In defense of Huddleston's expert opinions, HIC argues that Huddleston is an attorney with thirty years of experience in the insurance industry, and that his opinions go solely to the issue of whether HIC's decision to deny Plaintiff's claim for coverage was reasonable (Dkt. #54 at 2). HIC contends that Huddleston's opinions address mixed questions of fact and law and are permissible under the Federal Rules of Evidence.

Atrium asserts common law and statutory bad faith claims against HIC. Atrium asserts that HIC owed it a duty of good faith and fair dealing, which required HIC to perform in a reasonable and timely manner and to properly handle Atrium's claim. Atrium also asserts violations of the Texas Insurance Code that prohibit failing to settle a claim when the insurer's liability has become reasonably clear and refusing to pay a claim without conducting a reasonable investigation. HIC asserts that the "reasonableness of HIC's action in handling and denying Atrium's claim turns on the question of whether HIC could reasonably have believed that a court would agree with its policy interpretation as applied to the allegations in the underlying suit (as to duty to defend) and whether facts existed to justify the denial of indemnity coverage" (Dkt. #54 at 4).

Although a legal expert may not testify as to purely legal matters, he may testify as to mixed questions of law and fact. *Waco Int'l, Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d

523, 532-33 (5th Cir. 2002). The Fifth Circuit stated that, "merely being a lawyer does not disqualify one as an expert witness. Lawyers may testify as to legal matters when those matters involve questions of fact." *Askanase*, 130 F.3d at 672-73 (citing *Huddleston v. Herman & MacLean*, 640 F.2d 534, 552 (5th Cir. 1981), *aff'd in part, rev'd in part on other grounds* 459 U.S. 375 (1983)). In *Waco Int'l Inc.*, the Court held that the district court was correct in its statement, "in order for the jury to understand the standard of care as applies to a trademark owner's conduct in seeking a seizure, the expert has to explain what the law is, because the standard of care is defined in part by the law." 278 F.3d at 533. HIC contends that Huddleston must similarly describe the applicable law in his report so that the jury may understand the applicable insurance standards and industry practices. Furthermore, HIC asserts that the opinions contained in Huddleston's report, as described above, are proper as he discusses the law and facts HIC could have evaluated in reaching their conclusion.

After considering the expert report of Huddleston, the Court finds that his report invades on the province of both the Court, in instructing the jury on the applicable law, and the jury in determining the facts to be applied to the law. To the extent Huddleston purports to offer expert testimony regarding customs and practices in the insurance industry, the Court finds that his expert report does not do that. Huddleston is an experience insurance coverage attorney and advocate, and is not a claims adjuster or former claims adjuster. His report is clearly legally-based, and his opinions are not formed from his experiences in the insurance industry, but are formed from a legal analysis of his opinion of the applicable law. As another court noted:

> Determinations on the admissibility of evidence are left to the broad discretion of the district court. However, that discretion is dramatically narrowed where a party seeks to admit expert testimony purporting to offer legal conclusions, and where a party seeks to admit expert testimony which effectively tells the jury what result to reach. The first type of testimony would impermissibly invade the

province of the Court, and the second type of testimony would impermissibly invade the province of the jury.

*Travelers Indemnity Co. of Ill. V. Royal Oak Enterprises, Inc.,* No. 5:02-CV-28-OC-10GRJ, 2004 WL 3770571, at *2 (M.D. Fla. Aug. 20, 2004). Section V, subsection B of Huddleston's report contains an entire analysis of Texas law, the eight corners rule, and a legal assessment of the arguments of the parties (even discussing the merits of the objections made to the report and recommendation). This section improperly invades the province of the Court. Section V, subsection C of Huddleston's report goes on to address the issue of reasonableness, first discussing the conflict in the law that pertains to the legal issues in this case, then discussing the reasonableness of the actions taken by HIC with numerous citations to case law. Huddleston goes on to discuss extrinsic evidence, determining that it is permissible to use extrinsic evidence in this case. Huddleston then applies the facts to the law and concludes that HIC's actions were reasonable. This improperly invades the province of both the Court and the jury. Section V, subsection D is a pure legal conclusion, as Huddleston admits that it is for the Court to determine whether the duty of good faith applies in this setting. Section V, subsection E reads like a legal brief which analyzes the elements of the statutory claims and provides a legal definition of "knowingly." Simply put, Huddleston's report contains the legal arguments and analysis that the Court would expect the attorneys for HIC to make regarding the applicable law and the relevant facts that should apply in this case. As one court stated, the expert's report is inadmissible because it was:

> replete with legal conclusions and speculations that ultimately render his entire report deficient. [The expert's] major thesis, that the [] Defendants did not breach the covenant of good faith and fair dealing, is an obvious conclusion of law inappropriate for an expert report. His conclusion implies some level of legal analysis on his part, and does not assist the factfinder toward resolution of the issues.

*Holman Enters. v. Fidelity & Guar. Ins. Co.,* 563 F. Supp. 2d 467, 472 (D. N.J. 2008). The court did note that the reasonableness of an insurer's denial of a claim may be an appropriate subject matter for an expert witness, but it would not permit the expert to testify because there was not "any sort of gauge for the basis of his decision, either from his own extensive experience in the industry or some industry standards or guidelines…" *Id*. at 473 (citation omitted). The Court agrees that whether an insurer acted reasonably is to be judged by the standards of the insurance industry, not by an attorney offering a legal opinion based on his interpretation of case law.

For the above reasons, the Court finds that Plaintiff's motion to strike the expert report of Huddleston should be granted. The Court finds that Section V, subsection A, footnotes one and two should be stricken, along with subsections B, C, D, and E, in their entirety. After those portions are stricken, there is nothing remaining in Huddleston's report that would assist the finder of fact in understanding the evidence or determining an issue of fact. Therefore, the Court finds that Huddleston's report should be stricken in its entirety.

## CONCLUSION

Based on the foregoing, the Court finds that Plaintiff's Motion to Strike Opinion Testimony and Report (Dkt. #51) is **GRANTED**, and the expert report of Michael W. Huddleston will be stricken in its entirety.

**IT IS SO ORDERED.**
**SIGNED this 15th day of December, 2014.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE