# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| CORINTH INVESTORS HOLDINGS, LLC § | | |
| D/B/A ATRIUM MEDICAL CENTER § | | |
| § | | |
| V. § | | CASE NO. 4:13-CV-682 |
| § | | Judge Mazzant |
| EVANSTON INSURANCE COMPANY § | | |
| AND HOMELAND INSURANCE § | | |
| COMPANY OF NEW YORK § | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Homeland Insurance Company of New York's Motion for Summary Judgment against Evanston Insurance Company (Dkt. #63) and Defendant Evanston Insurance Company's Motion for Summary Judgment on Homeland Insurance Company of New York's Cross-Claim against Evanston Insurance Company (Dkt. #64). After considering the motions, responses, and relevant pleadings, the Court finds that Defendant Homeland Insurance Company of New York's Motion for Summary Judgment against Evanston Insurance Company (Dkt. #63) be granted and that Defendant Evanston Insurance Company's Motion for Summary Judgment on Homeland Insurance Company of New York's Cross-Claim against Evanston Insurance Company (Dkt. #64) be denied.

## BACKGROUND

Plaintiff Corinth Investors Holdings, LLC d/b/a Atrium Medical Center ("Atrium") is the named insured under a policy of insurance issued by Defendant Homeland Insurance Company of New York, ("Homeland") which is entitled "Health Care Organizations and Providers Professional Liability, General Liability and Employee Benefit Liability Policy" and is numbered MPP-4999-13 (the "Homeland Policy"). The Homeland Policy has a coverage period of January 1, 2013 to January 1, 2014. Prior to this policy, Atrium was the named insured under a policy of

insurance issued by Evanston Insurance Company numbered SM-884484 and includes a "Specified Medical Professions Professional Liability Coverage Part" (the "Evanston Policy"). The Evanston Policy has a coverage period of January 1, 2012 to January 1, 2013.

On December 21, 2012, a lawsuit was filed against Atrium in the 431st District Court of Denton County, Texas, styled *Garrison, et al. v. Kahn, et al.*, No. 2012-71390-431, which asserted professional liability claims against Atrium (the "Garrison litigation" or the "underlying litigation"). In the Garrison litigation, the plaintiff, a former Atrium patient, alleged that he suffered injuries and now faces terminal illness due to the failure of his primary physician to advise him of the results of a CT scan performed at Atrium that revealed a stage I mediastinal mass located in his thymic gland. Atrium was served with notice of this lawsuit on January 2, 2013. Atrium notified Homeland and Evanston of the lawsuit and sought defense and indemnity pursuant to the insurance policies. Both Homeland and Evanston denied coverage. Homeland asserted that the claim was not "first made" against Atrium during the policy period's coverage date and was excluded by the Homeland Policy's prior knowledge exclusion. Evanston also asserted that the claim was not covered by its policy because Atrium did not receive notice of the claim until after the Evanston's Policy coverage ended.

On January 23, 2014, Atrium filed a Motion for Partial Summary Judgment seeking declaratory judgment that Homeland owes a duty to defend Atrium in the underlying litigation (Dkt. #9). On August 25, 2014, an Order Adopting Report and Recommendation of United States Magistrate Judge was entered in this case that granted Atrium's Motion for Partial Summary Judgment and found that Homeland has a duty to defend Atrium (Dkt. #50). Soon thereafter, both Homeland and Evanston filed cross-motions for summary judgment seeking a declaration as to the existence of Evanston's duty to defend Atrium in the underlying litigation

(Dkts. #63, #64). On November 4, 2014, Evanston filed its Response to Homeland's Motion for Summary Judgment (Dkt. #67). On November 14, 2014, Homeland filed its Response to Evanston's Motion for Summary Judgment and Reply to Evanston's Response to Homeland's Motion for Summary Judgment (Dkt. #68).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. Unit B 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the

movant has satisfied its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendants Evanston and Homeland have submitted cross-motions for summary judgment seeking a declaration as to the existence of Evanston's duty to defend Atrium in the underlying Garrison litigation (Dkts. #63, #64). Evanston argues that it does not have a duty to defend because the pleadings in the underlying litigation do not specifically allege that Atrium received notice of the claim during Evanston's coverage period, while Homeland argues that the pleadings in the underlying litigation establish a claim that is at least potentially covered by the Evanston Policy.

Because the Court's jurisdiction is based upon the federal diversity statute, the Court must "apply Texas law as interpreted by Texas state courts." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011) (quoting *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000)). Under Texas law, "insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010). When analyzing an insurance policy, the Court's primary concern is "[e]ffectuating the parties' expressed intent" where "[n]o one phrase, sentence, or section [of the policy is] isolated from its setting and considered apart from

4

the other provisions." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008) (citation omitted). A policy's terms must be given their plain meaning, without inserting additional provisions in the contract. *Id*.

Under Texas law, an insurer typically has "two responsibilities relating to coverage—the duty to defend and the duty to indemnify." *Gilbane*, 664 F.3d at 594 (citing *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)). The duties to defend and indemnify are distinct and may exist independently. *Id*.; *see also Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253-54 (5th Cir. 2011). An insurer's duty to defend is established by the information contained solely in the insurance policy and the pleadings in the underlying litigation whereas the duty to indemnify is established by the extrinsic evidence introduced during litigation. *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). When analyzing the duty to defend, the Court employs the "eight-corners rule," which "takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant." *Id*. (citing *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). Moreover, the eight-corners analysis "does not rely on the truth or falsity of the underlying allegations; an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, *potentially* assert a claim for coverage under the insurance policy." *Colony*, 647 F.3d at 253 (citing *id.* at 308) (emphasis in original). All doubts regarding the duty to defend are resolved in favor of the insured, and the pleadings are construed liberally. *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.,* 538 F.3d 365, 368 (5th Cir. 2008) (noting that "[t]he rule is very favorable to insureds because doubts are resolved in the insured's favor"). If, after applying the eight-corners

5

rule, the Court finds that a claim is potentially covered by the insurance policy, the insurer must defend the entire suit. *See Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).

As a preliminary matter, the policyholder "bears the initial burden of showing that the claim [in the underlying litigation] is potentially within the insurance policy's scope of coverage." *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001) (citation omitted). In its response, the insurer then carries the burden of establishing that "the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of *all* claims, also within the confines of the eight corners rule." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (emphasis in original). However, "[e]xclusions [in the insurance policy] are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Design*, 538 F.3d at 370.

In the current case, Evanston argues that "absent an allegation in the underlying pleading that Atrium ***received*** the Notice Letter during the Evanston's Policy's coverage period, coverage under the Evanston Policy is not triggered" (Dkt. #64 at 6, ¶ 18 (emphasis in original)). Evanston additionally argues that this Court's prior finding that Homeland has a duty to defend Atrium (Dkts. #30) precludes its own duty to defend Atrium (Dkt. #64). Evanston is incorrect on both accounts. As the Court has already discussed (Dkt. #30), the duty to defend is not extinguished simply because the pleadings in the underlying litigation fail to state the date that Atrium first received notice of the claim because the Court may consider any "reasonable inferences that flow from the facts alleged." *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 601 (5th Cir. 2006) (citing *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 645 (Tex. 2005)). Instead, the Court must analyze the "eight-corners" of the insurance policy and underlying pleadings to see if the insured's claim is "*potentially*" within the insurance policy's scope of coverage.

6

*Colony*, 647 F.3d at 253 (citing *GuideOne*, 197 S.W.3d at 308) (emphasis in original). This means that the Court must determine if the pleadings in the underlying litigation allege that Atrium potentially received the first notice of the claim during the Evanston Policy's coverage period. Moreover, the Court must analyze each defendant on its own merits without regard to other insurers' duty to defend. *See id.*

Turning to the eight-corners rule, the Court will first analyze the four corners of the insurance policy. The Evanston Policy is a claims-made policy in which Evanston "shall have the right and duty to defend and investigate any Claim to which [coverage applies]" (Dkt. #63, Ex. 1 at 39). Under the policy, coverage to defend Atrium extends to any act, error, or omission in providing professional medical services during the coverage period of January 1, 2012 to January 1, 2013, and the policy includes the following provision:

> The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount . . . which the Insured shall become legally obligated to pay as Damages as *result of Claims first made against the Insured during the Policy Period* . . . and reported to the Company pursuant to the Section A., Claim Reporting Provision for Professional Personal Injury to which this Coverage Part applies by reason of any act, error or omission in Professional Services rendered or that should have been rendered by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's Professional Services . . .

(*Id.*, Ex. 1 at 77, italics added). The term "Claim" is defined in the Evanston Policy as a "demand received by the Insured for monetary damages or services and shall include the service of suit or institution of arbitration proceedings against the Insured" (*Id.*, Ex. 1 at 78). Additionally, the "Section A., Claim Reporting Provision for Professional Personal Injury" requires that a "Claim" is reported to Evanston as "soon as practicable" (*Id.*, Ex. 1 at 81). With these sections combined, the Evanston Policy indicates that Evanston must defend Atrium against demands for monetary damages or services, including the initiation of legal proceedings,

7

relating to professional medical service acts, errors, or omissions that are first received by Atrium between January 1, 2012 and January 1, 2013.

Having analyzed the Evanston Policy, the Court must now analyze the four corners of the pleadings in the underlying litigation without considering any extrinsic evidence. Even though none of the pleadings specifically state the date that Atrium first received notice of the claim, the pleadings do include information that show two potential dates when Atrium first received notice. First, the original petition establishes that it was filed and accepted by the Denton County Clerk of Court on December 21, 2012, and the return of service filed with the court establishes that Atrium was served with the petition and citation on January 2, 2013[1] (Dkt. #63, Ex. 2). This evidence conclusively shows that Atrium received notice—but not necessarily the first notice—of the claim on January 2, 2013. As the Court previously explained, these allegations are sufficient to establish that Homeland has a duty to defend in the underlying litigation because this date is potentially the first time that Atrium received notice of the claim (Dkt. #30 at 11-13).

Another significant piece of information alleged in the pleadings is the "Pre-Suit Notice" section of the original petition. Specifically, this section alleges the following information:

> Pursuant to §74.051(a) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, timely pre-suit Notice along with an "Authorization Form for Release of Protected Health Insurance Information" in compliance with section 74.052(c) was sent to one or more defendants via certified mail, return receipt requested which is sufficient as to all

(Dkt. #63, Ex. 2, ¶ 41). As the Court has explained, this section taken by itself does not conclusively allege that Atrium did or did not first receive notice of the claim prior to being served on January 2, 2013 (Dkt. #30 at 11-12). However, the Court's prior findings regarding

---

[1] Even though Atrium's date of service is uncontested, the Court notes that the return of service, while not physically part of an original petition, is an intrinsic extension of the original petition and one of the "pleadings" that the Court may consider. TEX. R. CIV. P. 106-107 (requiring that the citation be served with a copy of the original petition attached and that a return of service be filed with the court as evidence of proper service).

this provision must necessarily shift because the Court is now analyzing the pleadings in conjunction with a different insurer-insured relationship and policy. The Texas Supreme Court has clearly explained that "in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (citations omitted). When assessing Homeland's duty to defend, the Court resolved the doubt as to Atrium's receipt of pre-suit notice in a way that favored the insured Atrium, namely that Atrium did not receive pre-suit notice before being served on January 2, 2013, which resulted in a finding that Homeland has a duty to defend in the underlying litigation (Dkt. #30). Now when assessing Evanston's duty to defend, the Court similarly resolves any doubts regarding the pre-suit notice in the insured's favor, which is now Homeland standing in the shoes of Atrium. Thus, the Court now finds that in regard to Evanston's duty to defend, the "Pre-Suit Notice" section of the underlying petition makes it reasonable to infer that Atrium potentially first received pre-suit notice, as required by §74.051(a) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, during the coverage period of the Evanston Policy and prior to December 21, 2012. Because the Court has to find only that the claim is potentially within the insurance policy's scope of coverage to establish a duty to defend, the Court accordingly finds that the Evanston Policy and underlying pleadings establish that Evanston has a duty to defend Atrium in the Garrison litigation.

## CONCLUSION

Based on the foregoing, the Court finds that Defendant Homeland Insurance Company of New York's Motion for Summary Judgment against Evanston Insurance Company (Dkt. #63) is

hereby **GRANTED** and Defendant Evanston Insurance Company's Motion for Summary Judgment on Homeland Insurance Company of New York's Cross-Claim against Evanston Insurance Company (Dkt. #64) is hereby **DENIED**. As a result, the Court finds that Evanston Insurance Company has a duty to defend Corinth Investors Holdings, LLC d/b/a Atrium Medical Center in the underlying litigation. There are several claims remaining in this litigation to be determined at a later date, which include claims for a duty to indemnify, breach of contract, breach of the duty of good faith and fair dealing, claims under the Texas Insurance Code, and the Texas Deceptive Trade Practices Act.

    **SIGNED this 24th day of March, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE